RECEIVED
IN LAKE CHARLES, LA.
JAN 22 2014
TONY R. MOORE, CLERK
BY_____
DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| CHAD JOHNSON, ET AL. | * | CIVIL ACTION NO. 2:11-CV-1722 |
| Plaintiffs | * | |
| V. | * | JUDGE MINALDI |
| RAILROAD CONTROLS, L.P., ET AL. | * | |
| Defendants | * | MAGISTRATE JUDGE KAY |

## MEMORANDUM RULING

Before the court is the defendants', BNSF Railway Company (BNSF) and Railroad Controls, L.P. (Railroad Controls), Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction [Doc. 35], as well as the defendant's, TNT Equipment Sales and Rentals, Inc. (TNT), Motion to Dismiss for Lack of Subject Matter Jurisdiction [Doc. 36]. The plaintiffs have filed a Memorandum in Opposition [Doc. 44] to both Motions, to which the defendants have timely filed Replies [Docs. 52 & 53]. Also, the plaintiffs, BNSF, Railroad Controls, and TNT have all submitted Supplemental Memoranda [Docs. 61, 62, & 66]. For the reasons set forth below, the defendants' Motions [Docs. 35 & 36] be and hereby are **GRANTED IN PART, AND DENIED IN PART.**

### FACTS AND PROCEDURAL HISTORY

Chad Johnson and Betty Johnson filed suit in federal court on September 26, 2011, against Railroad Controls, BNSF, and TNT, for injuries allegedly sustained by Mr. Johnson in the course of his employment with Railroad Controls.[1] Railroad Controls is a railroad services

---

[1] Compl. [Doc. 1], at 1-3.

1

construction and maintenance company.[2] Railroad Controls was employed by BNSF as a third party contractor at the time of the incident.[3]

According to the plaintiffs' complaint, Mr. Johnson was aboard a high rail dump truck vehicle on September 26, 2010, in Washington State when he allegedlyسustained serious bodily injury and severe post-traumatic stress disorder when the high rail dump truck vehicle lost control.[4] At the time, Mr. Johnson had been working on a BNSF railroad track when he was ordered to climb aboard the vehicle, which was then being driven by Mr. Devon Klein.[5] Mr. Klein soon realized that the truck brakes were not functioning, and informed the flagger via radio that they were out of control, at which point they were advised to "bail out."[6] The two men remained in the vehicle, and Mr. Johnson allegedly sustained injuries while the vehicle was out of control and in the ensuing stop when "the truck caught on something and flipped back on its four tires."[7]

The plaintiffs sued under a negligence theory, seeking damages.[8] Mrs. Johnson also sued "under Federal Tort law" for loss of consortium, among other claims, and Mr. Johnson sought punitive damages "under Federal Law for the gross negligence of the defendants."[9]

In their initial complaint, the plaintiffs asserted that this court has federal question jurisdiction predicated upon the applicability of the Federal Employers' Liability Act, 45 U.S.C. §§ 51-60 (FELA), and the Federal Safety Appliances Act, 45 U.S.C. §§ 4, 11.[10] Railroad

---

[2] *Id.* at 3.
[3] Memo. in Supp. [Doc. 35-1], at 2.
[4] Compl. at 3-4.
[5] Compl. at 5.
[6] *Id.* at 5-6.
[7] *Id.* at 6.
[8] *Id.* at 8.
[9] *Id.*
[10] *Id.* at 2-3.

Controls and BNSF filed a Motion to Dismiss [Doc. 35], as did TNT.[11] Railroad Controls', BNSF's, and TNT's (the defendants) Motions essentially argue that the court lacks subject matter jurisdiction because Mr. Johnson is "not a railroader subject to the benefits of the FELA and its progeny."[12] Thus, the defendants argue, since FELA claims are applicable only to employers who are railroad common carriers, and Railroad Controls—Mr. Johnson's employer—is not classified as a railroad common carrier, FELA has no applicability.[13]

In the plaintiffs' Opposition [Doc. 44], they argue first that the relationship between Railroad Controls and BNSF sufficiently brings this action under FELA, thus providing a basis for an assertion of federal question subject matter jurisdiction.[14] The plaintiffs also for the first time seek an assertion of jurisdiction on the basis of the parties' diversity of citizenship, pursuant to 28 U.S.C. § 1332(a)(1).[15]

The plaintiffs thereafter filed a Motion to Amend [Doc. 45] their complaint, seeking an assertion of *both* federal question jurisdiction as well as diversity of citizenship jurisdiction.[16] The Amended Complaint also sought to add as defendants Diversified Metal Fabricators, Inc., and Navistar, Inc.[17] BNSF and Railroad Controls filed a Motion to Strike [Doc. 50] in response, seeking to strike the plaintiffs' amended complaint. On October 22, 2013, by a Memorandum Order [Doc. 56] of the Magistrate Judge, the plaintiffs' Motion to Amend [Doc. 45] was granted and the Motion to Strike [Doc. 50] was denied.[18] Following the Magistrate Judge's ruling, the parties were granted leave to submit Supplemental Memoranda [Docs. 61, 62 & 66] in light of the plaintiffs' filing of the Amended Complaint.

---

[11] *See* Mot. to Dismiss [Doc. 36].
[12] Memo. in Supp. [Doc. 35-1], at 2; *see also* Memo. in Supp. [Doc. 36-1], at 2-6.
[13] Memo. in Supp. [Doc. 36-1], at 3-4.
[14] Memo. in Opp. [Doc. 44], at 1-3.
[15] *Id.* at 7-8.
[16] Am. Compl. [Doc. 45-3], at 2.
[17] Am. Compl. [Doc. 57], at 2.
[18] Memo. Order [Doc. 56], at 1.

## LAW & ANALYSIS

### Motions to Dismiss for Lack of Subject Matter Jurisdiction Under Rule 12(b)(1)

Rule 12(b)(1) Motions permit a party to challenge a court's jurisdiction to hear a case. FED. R. CIV. PRO. 12(b)(1). Where a court finds that subject matter jurisdiction is lacking, the case must be dismissed. FED. R. CIV. PRO. 12(h)(3). A district court may dismiss a case for lack of subject matter jurisdiction on the basis of "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *St. Tammany Parish v. FEMA*, 556 F.3d 307, 315 (5th Cir. 2009) (*citing Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)). The party asserting the existence of jurisdiction has the burden of showing that it exists. *Bernard v. Lafayette Consol. Gov't*, No. 6:13-cv-02339, 2013 U.S. Dist. LEXIS 177109, at *5 (W.D. La. Oct. 17, 2013) (*citing St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998)). Federal courts are courts of limited jurisdiction, empowered to hear civil actions presenting a federal question, *see* 28 U.S.C. § 1331, as well as those cases where the amount in controversy exceeds $75,000.00 exclusive of interest and costs and diversity of citizenship exists between the adversarial parties. 28 U.S.C. § 1332.

Federal courts possess original jurisdiction over civil actions arising under federal law. 28 U.S.C. § 1331. "A suit arises under the Constitution and laws of the United States only when the plaintiff's statement of his own cause of action shows that it is based upon those laws or that Constitution." *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 152 (1908). "The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on

the face of the plaintiff's properly pleaded complaint." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987) (*citing Gully v. First Nat'l Bank*, 299 U.S. 109, 112-13 (1936)).

The plaintiffs' Amended Complaint [Doc. 57] asserts that federal question jurisdiction exists because this action arises under FELA, as well as other causes of action.[19] As the plaintiffs' complaint presents a federal question on its face, this court clearly has jurisdiction pursuant to 28 U.S.C. § 1331. The defendants' arguments pertaining to the applicability of FELA are more appropriately argued pursuant to Rule 12(b)(6).

However, even if federal question jurisdiction were lacking, subject matter jurisdiction herein would still be proper on the basis of diversity of citizenship. In order for jurisdiction to be proper on the basis of diversity of citizenship under 28 U.S.C. § 1332, there must be complete diversity of the parties, and an amount in controversy that exceeds $75,000.00. 28 U.S.C. § 1332. "The first element, complete diversity, requires that none of the parties on either side of the litigation may be a citizen of the state of which a party on the other side is a citizen." *Guidry & Begnaud Developers, L.L.C. v. Houlihan Smith & Co.*, No. 07-2192, 2008 U.S. Dist. LEXIS 56039, at *4 (W.D. La. May 8, 2008) (*citing Strawbridge v. Curtiss*, 7 U.S. 267 (1806)). The diverse citizenship among all adverse parties must exist at the time of the filing of the complaint, and is "unaffected by subsequent changes in the citizenship of the parties." *Rick v. Women's & Children's Hosp.*, No. 08-2013, 2010 U.S. Dist. LEXIS 58021, at *7-8 (W.D. La. May 10, 2010) (*citing Mas v. Perry*, 489 F.2d 1396, 1399 (5th Cir. 1974)). A corporation's citizenship is based on its state of incorporation as well as the location of its principal place of business. 28 U.S.C. § 1332 (c)(1). "[T]he phrase 'principal place of business' refers to the place where the corporation's high level officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 559 U.S. 77, 80 (2010).

---

[19] Am. Compl. [Doc. 57], at 2.

The plaintiffs' amended complaint asserts that Railroad Controls is incorporated under Texas law, and has its principal place of business in Texas, thus making it a Texas citizen. It also states that BNSF, a wholly owned subsidiary of Berkshire Hathaway, Inc., is incorporated under Nevada law and has its principal place of business in Texas. TNT has its principal place of business in, and is incorporated under the laws of, New Jersey. Diversified Metal Fabricators, Inc., has its principal place of business in, and is incorporated under the laws of, Georgia; and Navistar, Inc., is a foreign registered corporation incorporated under Delaware law, and having its principle place of business in Illinois.[20] The plaintiffs are citizens of Louisiana.[21] Thus, on the face of the complaint, diversity of citizenship is present.[22]

As to the amount in controversy, "[w]hen the plaintiff has alleged a specific sum of damages in [their] petition, usually that amount controls, if made in good faith." *Briley v. State Farm Mut. Auto. Ins. Co.*, No. 10-cv-1350, 2012 U.S. Dist. LEXIS 7951, at *4 (W.D. La. Jan. 23, 2012) (*citing St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938)). The plaintiff's allegation in this regard is generally considered sufficient to invoke diversity jurisdiction, and dismissal based on an insufficient amount in controversy will only be granted where it is shown "to a legal certainty that the claim is really for less than the jurisdictional amount." *Lalisan v. Wyndham Vacation Ownership*, No. 11-2178, 2012 U.S. Dist. LEXIS 77338, at *5 (W.D. La. Jun. 1, 2012) (citations omitted).

Here, the plaintiffs have sued for a variety of claims, and seek damages totaling $5,000,000.00.[23] Without passing any opinion on the appropriateness or inappropriateness of

---

[20] Am. Compl. [Doc. 57], at 1-2.
[21] *Id.* at 2.
[22] The defendants initially argued against this court's exercise of diversity jurisdiction based on the fact that diversity jurisdiction was not asserted in the plaintiffs' original complaint, which has obviously been remedied by the plaintiffs' Amended Complaint [Doc. 57].
[23] Am. Compl. [Doc. 57], at 5.

this estimation of the plaintiffs' damages, it appears clear to the court that an action of this kind likely satisfies the amount in controversy requirement, and certainly does not meet the "legal certainty" test for dismissal. As a result, the court finds that the exercise of jurisdiction on the basis of diversity of citizenship under 28 U.S.C. § 1332 is appropriate. Accordingly,

**IT IS ORDERED** that the defendants' Motions to Dismiss [Docs. 35 & 36] be and hereby are **DENIED IN PART** insofar as they seek the dismissal of the plaintiffs' claims based on a lack of subject matter jurisdiction.

### Motions to Dismiss for Failure to State a Claim Under Rule 12(b)(6)

BNSF and Railroad Controls argue that jurisdiction does not exist because Mr. Johnson is not a railroad employee and, as such, is not covered under FELA.[24] As previously stated, this argument is more akin to a Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim, which, in the defendants' Supplemental Memoranda [Docs. 61 & 62], is precisely how the defendants have characterized their Motions.

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is the proper mechanism for a defendant seeking to attack a plaintiff's complaint for failing to state a legally cognizable claim. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). In order for a plaintiff to properly state a claim for relief, a complaint must contain "a short and plain statement . . . showing that the pleader is entitled to relief" as well as "a demand for the relief sought." FED. R. CIV. PRO. 8(a). In order for the complaint to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Jackson v. La. Tech. Univ.*, No. 11-0524, 2011 U.S. Dist. LEXIS 147479, at *10 (W.D. La. Nov. 22, 2011) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (additional citation omitted)). "A claim has facial plausibility when the plaintiff pleads factual

---
[24] Memo. in Supp. [Doc. 35-1], at 4.

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Although a court must accept as true all of the allegations within a complaint, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted). All well-pleaded facts must be viewed in "the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (citations omitted). "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted).

Under FELA, 45 U.S.C. § 51, damages may be recovered by an injured railroad employee where that injury has resulted from the railroad's negligence. 45 U.S.C. § 51. "Employment," for FELA purposes, may be established by showing that Mr. Johnson "(1) served as a borrowed employee; (2) acted for two masters simultaneously; or (3) was a subservant of a company that was in turn a servant of the railroad." *Ancelet v. Nat'l R.R. Passenger Corp.*, 913 F. Supp. 968, 969 (E.D. La. 1995) (*citing Kelley v. S. Pac. Co.*, 419 U.S. 318, 324 (1974)).

The plaintiffs herein argue that Mr. Johnson was an employee of the railroad for purposes of FELA because he was the servant of Railroad Controls, which was itself the servant of BNSF.[25] A "servant" is defined as "a person employed to perform services in the affairs of another and who with respect to the physical conduct in the performance of the services is subject to the other's control or right to control." *Morris v. Gulf Coast Rail Group, Inc.*, 829 F. Supp. 2d 418, 423-24 (E.D. La. 2010) (*citing Kelley*, 419 U.S. at 324 (*citing* RESTATEMENT OF AGENCY (SECOND), § 220(1) (1958))).

The *Morris* court, discussing the subservant theory, stated that

---

[25] *See* Supplemental Memo. in Opp. [Doc. 66], at 4-5.

> [U]nder [FELA] a worker can be the employee of a railroad even though carried on the employment rolls of another company and paid by that other company. The test of employment is the established test in workers' compensation cases. It is whether the railroad has control of the employee or the right to control the employee. The law does not require that the railroad have full supervisory control. It requires only that the railroad, through its employees, plays "a *significant supervisory role*" as to the work of the injured employee.

*Morris*, 829 F. Supp. 2d at 425 (quoting *Lindsey v. Louisville & Nashville R.R. Co.*, 775 F.2d 1322, 1324 (5th Cir. 1985) (quoting *Kelley*, 419 U.S. at 327)). It should be noted, though, that "the very point sought to be made by the Court in *Kelley* is that the existence of merely an agency relationship between the plaintiff's direct employer and the railroad will not suffice to create an employment relationship between the plaintiff and the railroad under FELA." *Dominics v. Ill. Cent. R.R.*, 934 F. Supp. 223, 225-26 (S.D. Miss. 1996). In order to prevail under the subservant theory, the plaintiff must show that his employer was the servant, not merely the agent, of the railroad. *See id.* at 226.

In *Schmidt v. Burlington Northern & Sante Fe Railway Company, et al.*, 605 F.3d 686 (9th Cir. 2010), the Ninth Circuit was presented with a similar scenario in which the plaintiff was employed by Western Fruit Express (WFE), a subsidiary of BNSF. *Id.* at 688. In support of his contention that BNSF was his employer, the plaintiff offered evidence showing that he had initially applied to work at a BNSF office; he was first hired by someone who was purportedly a BNSF employee; several of the plaintiff's coworkers believed themselves to be BNSF employees; signage on the premises displayed BNSF logos; workers' hard hats bore BNSF logos; the plaintiff was given information on BNSF's retirement plan; BNSF's name was on the plaintiff's pay stubs and "[s]ome of his pay statements mentioned that BNSF was paying him on behalf of WFE;" internal publications referred to WFE employees as part of the BNSF team; and the plaintiff was screened by BNSF's medical officer, among other evidence. *Id.* at 688-89.

9

The court then noted that the Restatement lists several factors which are to be used in determining whether a master-servant relationship exists. *Id.* at 690 (*citing Kelley*, 419 U.S. at 325 (Douglas, J. dissenting) (*citing* RESTATEMENT (SECOND) OF AGENCY § 220 (1958) cmt. c; § 227 cmt. a; *Baker v. Texas & Pac. Ry. Co.*, 359 U.S. 227, 228 (1959)). These factors include:

> (a) the extent of control which, by the agreement, the master may exercise over the details of the work;
> (b) whether or not the one employed is engaged in a distinct occupation or business;
> (c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;
> (d) the skill required in the particular occupation;
> (e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;
> (f) the length of time for which the person is employed;
> (g) the method of payment, whether by the time or by the job;
> (h) whether or not the work is part of the regular business of the employer;
> (i) whether or not the parties believe they are creating the relation of master and servant; and
> (j) whether the principal is or is not in business.

*Id.* (*citing* RESTATEMENT (SECOND) OF AGENCY § 220(2) (1958)).[26] Applying these principles, and reversing the district court's grant of summary judgment in favor of the defendant railroad, the Ninth Circuit found that the plaintiff's "evidence could reasonably support a finding that WFE was BNSF's servant, and that BNSF had the right to control WFE's employees, including [the plaintiff]." *Id.*

The holding in *Schmidt* may be contrasted with the Sixth Circuit opinion in *Campbell v. BNSF Ry.*, 600 F.3d 667 (6th Cir. 2010). There, the plaintiff was employed by Pacific Rail Services, L.L.C. (PRS), which "operates intermodal rail facilities for railroad companies throughout the United States." *Id.* at 668. The *Schmidt* court found that no employer-employee

---

[26] The court notes that "[i]n 2006 the Restatement (Second) of Agency was superseded by the Restatement (Third) of Agency, which uses 'employer and 'employee' rather than 'master' and 'servant,' and defines an employee simply as a type of agent subject to a principal's control." *Schmidt*, 605 F.3d at 690 n.3 (internal citations omitted).

relationship existed under the subservant theory between the plaintiff and the defendant railroad, even though BNSF employed a worker at PRS's terminal who was charged with observation and, to a certain extent, supervision of PRS employees. *Id.* at 669. This BNSF employee was

> charged with observing PRS workers to insure their timely completion of work and adherence to BNSF's safety protocols. Although [the BNSF employee] had 'discussions' with PRS about which tracks needed to be cleared and spotted, PRS managers and supervisors were responsible for directing their employees in the specifics of their jobs, assigning containers to rail cars, and coordinating and tracking the work. [He] also had no authority to hire, fire, discipline, train, evaluate, or supervise PRS employees.

*Id.* Further, the agreement between PRS and BNSF required PRS employees to "comply with BNSF's safety and environmental rules, traffic control requirements, speed limits, and operating policies." *Id.* Nevertheless, the court found that BNSF was not the plaintiff's employer, even under a subservant theory, as PRS employed its own managers and supervisors, and "BNSF had no authority in the crucial areas of hiring, training, evaluating, disciplining, and terminating PRS employees." *Id.* at 673. Thus, "PRS controlled, and had the exclusive right to control, its employees as BNSF's independent contractor." *Id.* at 674.

Here, BNSF and Railroad Controls argue that the plaintiffs have no claim under FELA because Mr. Johnson is not a railroad employee, *per se*, and he has never been employed by BNSF.[27] TNT, likewise, argues that since Railroad Controls, Mr. Johnson's employer, is not a common carrier as it is not a railroad, no claim exists under FELA.[28]

The plaintiffs, however, assert that "[Railroad Controls] is a servant of BNSF,"[29] and, as such, Mr. Johnson was operating as a subservant at the time of the accident in question. As support for this theory, the plaintiffs point to the fact that the accident occurred on BNSF

---

[27] Memo. in Supp. [Doc. 35-1], at 5.
[28] Memo. in Supp. [Doc. 36-1], at 3-4.
[29] Memo. in Opp. [Doc. 44], at 3.

11

tracks.[30] They also point out that BNSF issued access cards and training cards that were required of all contractors in order to be permitted access to BNSF property.[31] They state that "BNSF exercises control over [Railroad Controls] employee certification, training, and clearance as it pertains to these employees doing work for BNSF."[32] The plaintiffs note that BNSF and Railroad Controls offered no argument in opposition to the third method by which FELA employment may be demonstrated—the subservant theory.[33] In further support of their assertion of the applicability of the subservant theory of employment, the plaintiffs argue that BNSF control over Railroad Controls is demonstrated by, for instance, BNSF's requirement that "at the job site there must be [a Railroad Controls] employee who BNSF tests and qualifies to be a Maintenance Way Operating Rules Qualified Employee (MWOR)."[34] This person's work is said to be "subject to direct control from a BNSF dispatcher."[35] Further, the plaintiffs note that every worker on the job site must possess documentation showing a BNSF logo.[36]

BNSF and Railroad Controls argue that "BNSF did not have the power to direct, control, or supervise Chad Johnson in the performance of his work at the time that he was injured."[37] While the defendants concede that Mr. Johnson was injured on BNSF's track, they argue that the location of the injury alone should not automatically lead to federal employer liability.[38] BNSF and Railroad Controls also argue that neither the borrowed servant nor the dual servant theories are applicable to the instant case.[39]

---

[30] *Id.*
[31] *Id.*
[32] *Id.* at 5.
[33] *See* Supplemental Memo. in Opp. [Doc. 66], at 4.
[34] *Id.* at 5.
[35] *Id.*
[36] *Id.* at 6.
[37] Supplemental Memo. in Supp. [Doc. 62], at 8.
[38] *Id.*
[39] *Id.* at 10.

The facts here are more akin to those in the Sixth Circuit *Campbell* opinion than they are to the Ninth Circuit *Schmidt* case. According to the plaintiff's deposition testimony, the plaintiff never received a paycheck from BNSF, nor did he ever complete an employment application with BNSF.[40] Mr. Johnson stated that he had been employed by Railroad Controls for eight or nine years.[41] During that time, he was not paid by BNSF, rather he was an hourly employee of Railroad Controls.[42] Mr. Johnson's crew and supervisors consisted of Railroad Controls employees.[43] The supervisory role undertaken by BNSF here appears far less intrusive and controlling than that described in the *Campbell* case, where the court nonetheless found that no subservant relationship existed. Although the plaintiffs note that Railroad Controls employees were required by BNSF to undergo safety training,[44] the court is persuaded by the Sixth Circuit's view on the matter that "[i]t was certainly reasonable for BNSF, the rail yard property owner, to be concerned about workers performing potentially hazardous work on its land. Significantly, [the employer in *Campbell*] was responsible for *implementing* these policies on a daily basis." *Campbell*, 600 F.3d at 674. Such is the case here. Furthermore, Railroad Controls provided all of its own equipment.[45] Under these circumstances, the dismissal of the plaintiffs' FELA claims pursuant to Rule 12(b)(6) is appropriate. Accordingly,

**IT IS ORDERED** that the Motions to Dismiss [Docs. 35 & 36], filed by BNSF and Railroad Controls, and TNT, respectively, be and hereby are **GRANTED IN PART**, insofar as they seek the dismissal of the plaintiffs' claims under FELA.

---

[40] Dep. of Chad Johnson [Doc. 35-3], at 81.
[41] *Id.* at 12.
[42] *Id.* at 66.
[43] *Id.*
[44] Memo. in Opp. [Doc. 44], at 4.
[45] Depo. of Devon Klein [Doc. 53-1], at 3.

13

**IT IS FURTHER ORDERED** that BNSF's and Railroad Control's Motion to Dismiss [Doc. 35] be and hereby is **GRANTED IN PART** insofar as it seeks the dismissal of Mrs. Johnson's claims for loss of consortium under FELA.

Independent of the jurisdictional issues argued in its original Motion, TNT argues in its Supplemental Memorandum that dismissal of all of the plaintiffs' claims against TNT is appropriate under Rule 12(b)(6) at this time for failure to state a claim.[46] Essentially, TNT argues that the "plaintiffs have failed to make any allegations against defendant TNT."[47] TNT argues that, in the plaintiffs' Amended Complaint [Doc. 57], while the negligence of Railroad Controls is alleged, no negligence is alleged specifically against TNT.[48] Likewise, BNSF and Railroad Controls argue that, although the plaintiffs "assert a number of vague negligence claims," their "Amended Complaint contains insufficient factual allegations to raise [their] right to relief above the speculative level."[49]

As previously stated, all that a complaint requires is "a short and plain statement . . . showing that the pleader is entitled to relief" as well as "a demand for the relief sought." FED. R. CIV. PRO. 8(a). Further, to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Jackson v. La. Tech. Univ.*, No. 11-0524, 2011 U.S. Dist. LEXIS 147479, at *10 (W.D. La. Nov. 22, 2011) (*citing Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (additional citation omitted)). Here, the plaintiffs have alleged that Railroad Controls employed Mr. Johnson, and that BNSF and TNT were negligent.[50] The plaintiffs allege that this negligence led to Mr. Johnson's injuries while he

---

[46] Supplemental Memo. in Supp. of Mot. to Dismiss [Doc. 61], at 2.
[47] *Id.* (emphasis in original).
[48] *Id.*
[49] Supplemental Memo. in Supp. of Mot. to Dismiss [Doc. 62], at 3.
[50] Compl. [Doc. 1], at 1-3.

14

was working aboard a high rail dump truck.[51] Specifically, the plaintiffs have alleged that the defendants' collective negligence in the form of improper training, improper vehicle inspection, improper vehicle operation, and failure to warn all led to the accident.[52] The original complaint clearly alleges that one of the chief causes of the accident was the failure of the brake system on the vehicle.[53] Another alleged cause of the accident was the alleged failure of the driver, a Railroad Controls employee, to properly use the brakes.[54]

"Motions to dismiss under Rule 12(b)(6) 'are viewed with disfavor and are rarely granted.'" *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (*Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 (5th Cir. 2005)). Under these circumstances, the plaintiffs' claims for negligence have been sufficiently pleaded so as to survive a Motion to Dismiss under Rule 12(b)(6). Accordingly,

**IT IS ORDERED** that the defendants' Motions to Dismiss [Docs. 35 & 36] be and hereby are **DENIED IN PART** insofar as they seek the dismissal of the plaintiffs' state law claims pursuant to Rule 12(b)(6).

Lake Charles, Louisiana, this 15th day of January, 2014.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE

---

[51] *Id.* at 4.
[52] *Id.*
[53] *Id.* at 5.
[54] *Id.* at 7.

15