RECEIVED
IN LAKE CHARLES, LA.

DEC 17 2014

TONY R. MOORE, CLERK
BY_____
                    DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| CHAD JOHNSON and BETTY JOHNSON | : | DOCKET NO. 2:11 CV 01722 |
| VS. | : | JUDGE MINALDI |
| RAILROAD CONTROLS L.P., BNSF RAILWAY COMPANY and TNT EQUIPMENT SALES AND RENTALS, INC. | : | MAGISTRATE JUDGE KAY |

MEMORANDUM RULING

Before the court is the defendant Navistar, Inc.'s ("Navistar") Motion for Summary Judgment (Rec. Doc. 161).  This motion has been opposed by the plaintiff (rec. Doc. 183) and Navistar filed a Reply (Rec. Doc. 186).

Facts and Procedural History

The plaintiffs filed suit on September 26, 2011, against Railroad Controls L.P. ("RCL"), BNSF Railway Company ("BNSF"), and TNT Equipment Sales and Rentals, Inc. (TNT), seeking to recover for injuries allegedly sustained by Mr. Johnson on September 26, 2010, in the course of his employment with RCL.[1]  The plaintiffs' Second Amended Complaint (Rec. Doc. 93), which includes as defendants Diversified Metal Fabricators, Inc ("DMF")  and Navistar,[2] alleges that the high rail dump truck vehicle in which Mr. Johnson was riding as a passenger on the date of the alleged incident lost braking ability due to the defective nature of the truck and the railgear, resulting in Mr.

---

[1] *See generally* Compl. [Doc. 1].  *See also* Memo. Ruling [Doc. 88], at 1.

[2] Second. Am. Compl. [Doc. 93], at ¶ II.

Johnson's alleged injuries.[3]

The plaintiffs have asserted negligence claims against RCL, Mr. Johnson's employer at the time;[4] claims under the Louisiana Products Liability Act, LA. REV. STAT. ANN. §§ 9:2800.51, *et seq.*, against both DMF, as the manufacturer of the high rail system itself, and Navistar, as the manufacturer of the high rail dump truck that was involved in the accident;[5] a negligence claim against TNT for failing to properly install the braking system; and Mrs. Johnson has sued for loss of consortium.[6]

A prior Memorandum Ruling (Rec. Doc. 88) addressed BNSF and RCL's Rule 12(b)(1) Motions to Dismiss for Subject Matter Jurisdiction (Rec. Doc. 35), as well as a similar Motion (Rec. Doc. 36) filed by TNT. That ruling denied the defendants' Motions to Dismiss (Rec. Doc. 35 & 36) for a lack of subject matter jurisdiction, finding that diversity of citizenship subject matter jurisdiction existed pursuant to 28 U.S.C. § 1332.[7] The same ruling also granted the defendants' Motions to Dismiss the plaintiffs' claims under the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51-60, pursuant to Federal Rule of Civil Procedure 12(b)(6).[8] The court also denied the

---

[3] Second Am. Compl. [Doc. 93], at ¶¶ VII, IX, X-XII.

[4] *Id.* at ¶¶ VII, VIII.

[5] *Id.* at ¶ IX.

[6] *Id.* at XVI. Specifically, the Mrs. Johnson alleges a "loss of marital benefits, including companionship, society, sexual relations, affection and comfort in addition to loss of support, loss of income, loss of insurance, loss of pension, loss of retirement benefits, loss of fringe benefits, [and] loss of services." *Id.* at ¶ XV.

[7] Memo. Ruling [Doc. 88], at 7.

[8] Memo. Ruling [Doc. 88], at 13.

defendants' motion to dismiss the plaintiffs' state law claims for failure to state a claim.[9]

On December 11, 2013, Navistar filed a Motion to Dismiss (Rec. Doc. 69) for failure to state a claim, and the plaintiffs' filed a Motion (Rec. Doc. 78) shortly thereafter for the dual purposes of responding to Navistar's Motion as well as requesting a stay of the court's consideration of Navistar's Motion to Dismiss.  On January 16, 2014, DMF also filed a Rule 12(b)(6) Motion to Dismiss (Rec. Doc. 85), and the plaintiffs again responded with a combined opposition and request for a stay of the court's consideration of DMF's Motion.[10]  On February 27, 2014, the plaintiffs' Second Amended Complaint (Rec. Doc. 93) was entered into the record.  On March 11, 2014, BNSF and RCL filed a Second Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction (Rec. Doc. 94).  Navistar thereafter filed a Motion for Summary Judgment (Rec. Doc. 97) on March 18, 2014.  The plaintiffs' responses to these latter two Motions (Rec. Docs. 94 & 97) consisted of another Motion to Stay (Rec. Doc. 107) as to both BNSF and RCL's 12(b)(1) Motion to Dismiss (Rec. Doc. 94) and Navistar's Motion for Summary Judgment [Doc. 97].

On July 7, 2014 this court issued a Memorandum Ruling (Rec. Doc. 118) and Judgment (Rec. Doc. 119) denying Navistar's Motion to Dismiss (rec. Doc. 69) for failure to state a claim for a construction or composition defect and granting Navistar's Motion to Dismiss for failure to state a claim under the LPLA for design defect. The Motion to Dismiss (Rec. Doc. 94) for lack of subject matter jurisdiction filed by RCL and BNSF    was also denied. The Motion to Stay (Rec. Doc. 78) was denied. The Motion to Dismiss (Rec. Doc. 85) for failure to state a claim filed by DMF was denied. The second Motion to Stay (Rec. Doc. 91) was denied as moot. The second Motion to Dismiss (Rec.

_____

[9] Memo. Ruling [Doc. 88], at 15.

[10] *See generally* Mot. for Leave to Stay the Mot. to Dismiss [Doc. 91].

Doc. 94) for lack of subject matter jurisdiction was granted for claims pursuant to the FELA, including Mrs. Johnson's lack of consortium claims. The Motion for Summary Judgment (Rec. Doc. 97) filed by Chad Johnson was denied.

The motion now before the court seeks summary judgment on the plaintiffs' claims against Navistar based upon the plaintiffs' claims of defective construction and composition of the cab and chassis under the Louisiana Products Liability Act.

Rule 56 Standard

Fed.R.Civ.P. 56(a) provides that summary judgment shall be granted when the movant shows the absence of any genuine dispute as to any material fact and, for that reason, shows that he is entitled to judgment as a matter of law. The movant must demonstrate the absence of any genuine dispute as to any material fact by citing to particular parts of materials in the record, including depositions, documents and affidavits.[11] The movant may demonstrate entitlement to judgment as a matter of law by pointing out the nonmoving party's inability to produce evidence which, when taken as true for the purposes of the motion, would provide a legally sufficient basis upon which a reasonable jury might base a judgment in the nonmoving party's favor.[12]

Once a motion for summary judgment is made and properly supported, the burden shifts to the nonmoving party to come forward with evidence which demonstrates the essential elements of

---

[11] Fed.R.Civ.P. 56(c)(1)(A).

[12] *Celotex Corp. v. Catrett*, 477 U.S. 317, 2553–54, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir.1995); *Shotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 913 (5th Cir.1992), cert. denied 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992).

his claims.[13]  In so doing, the nonmoving party establishes the existence of a genuine issue of material fact for trial. The nonmoving party must show that the evidence, when viewed in the light most favorable to him, is sufficient to enable a reasonable jury to render a verdict in his favor.[14]   A party whose claims are challenged by a motion for summary judgment may not rest on the allegations of the complaint and must articulate specific factual allegations which meet his burden of proof.[15]

If the nonmoving party meets his burden of proof, summary judgment is inappropriate and the claims must be preserved for further proceedings. If, on the other hand, the nonmoving party does not meet his burden, the court must grant summary judgment in recognition of the implausibility of the claims at issue.[16]

All evidence submitted to the court in support of or in opposition to a motion for summary judgment must be of the sort which would be admissible at the trial of the matter.[17] "Metaphysical doubt" as to the existence of a genuine issue for trial is insufficient, as are "unsubstantiated assertions" and "conclusory allegations[.]"[18] The court will construe all evidence in the light most

---

[13]  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir.1994).

[14]  *Celotex*, 477 U.S. at 325.

[15]  *Id.*

[16]  *Id.* at 322.

[17]  Fed.R.Civ.P. 56(c)(2); *Salas v. Carptener*, 980 F.2d 299, 305 (5 th Cir.1992) quoting *Broadway v. City of Montgomery,* 530 F.2d 657, 661 (5th Cir.1976).

[18]  *Little*, 37 F.3d at 1075, citing *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), *Lujan v. National Wildlife Federation*, 497 U.S. 871, 871–73, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1986); *Hopper v. Frank*, 16 F.3d 92 (5th Cir.1994).

favorable to the nonmoving party, but will not infer the existence of evidence not presented.[19]

Louisiana Product Liability

The plaintiff's claims at issue herein arise under the Louisiana Products Liability Act (LPLA). The LPLA establishes the exclusive theories of liability in actions against manufacturers for damage caused by their products. See La.Rev.Stat. Ann. § 9:2800.52. A plaintiff must prove four elements to establish a claim under the LPLA:

> (1) that the defendant is a manufacturer of the product; (2) that the claimant's damage
> was proximately caused by a characteristic of the product; (3) that this characteristic
> made the product "unreasonably dangerous;" and (4) that the claimant's damage arose
> from a reasonably anticipated use of the product by the claimant or someone else.

*Ayo v. Triplex, Inc.,* 457 F. App'x. 382, 385–86 (5th Cir.2012) (additional citations omitted). "'Manufacturer' means a person or entity who is in the business of manufacturing a product for placement into trade or commerce. 'Manufacturing a product' means producing, making, fabricating, constructing, designing, remanufacturing, reconditioning or refurbishing a product." La.Rev.Stat. Ann. § 9:2800.53(1). Furthermore, the LPLA also defines a manufacturer as "[a] person or entity who labels a product as his own or who otherwise holds himself out to be the manufacturer or the product." La.Rev.Stat. Ann. § 9:2800.53(1)(a). *Breaux v. Centrifuge Repair & Engineering L.P.,* 2014 WL 4929312 (W.D.La.,2014).

Law and Analysis

To prevail under the construction or composition theory, Louisiana courts require the plaintiff to (i) set forth the manufacturer's specifications for the product and (ii) demonstrate "how the product

---

[19] *Lujan*, 497 U.S. at 888.

6

materially deviated from those standards so as to render it 'unreasonably dangerous.' " *Jenkins v. Int'l Paper Co.*, 945 So.2d 144, 150 (La.Ct.App.2006); see also *Grenier v. Med. Eng'g Corp.*, 99 F.Supp.2d 759, 764 (W.D.La.2000). "Any deviation that increases the propensity for injury is material." *Masters v. Courtesy Ford Co.*, 758 So.2d 171, 192 (La.Ct.App.1999), vacated on other grounds by 765 So.2d 1056 (La.2000). *Roman v. Western Mfg., Inc.* 691 F.3d 686, 698 (5th Cir., 2012).

In an email to defense counsel, plaintiff's counsel stated that they do not have any evidence "to point that Navistar was the reason the accident occurred." (Navistar Ex. A). Plaintiffs' counsel states that the plaintiffs are worried that the other defendants will try to minimize their liability by pointing to Navistar if Navistar is dismissed and that is why they want Navistar left in the case. In his Opposition to the Summary Judgment, Mr. Eshani-Landry points to no evidence supporting liability, but argues that to dismiss Navistar would be "premature and unfair." (Opposition, p. 2). Mr. Eshani-Landry further argues that dismissing Navistar would result in a violation of the principles of equity and standards of fairness and justice because the rest of the defendants "who added parts to Navistar's product, have not yet tested Navistar's share of the liability in the cause of the accident." (Opposition, p. 2).

This case has been pending since September 26, 2011. There has been adequate time for discovery and the plaintiff seems to be operating under the mistaken assumption that it is the other defendants' burden to prove Navistar's liability. It is the plaintiffs' burden and this burden has not been met.

The plaintiff has submitted the report of their expert, Lewis Barbe.[20] This report alleges no defect in the incomplete vehicle when it left Navistar.[21] On September 12, 2014, Mr. Barbe's deposition was taken. In his deposition, Mr. Barbe stated unequivocally that he had no criticism of Navistar and there was no defect in the design, manufacture, construction or composition of the incomplete vehicle manufactured by Navistar.

Navistar designed in part, manufactured in part, and assembled in part the Cab and Chassis for the above-mentioned vehicle with final assembly on or about July 17, 2007. (*See* Supplemental Affidavit of Roy Zeitlow, attached as Navistar's Exhibit"E"). The cab and chassis were designed, built and certified as an "incomplete vehicle" under 49 CFR 568.4. At the time, the cab and chassis left Navistar's care, custody and control, it did not have a dump body nor railgear attached. (Id.) (*See* also Ex. "D" p. 20). Navistar asserts that the subject cab and chassis met and exceeded all Federal Motor Vehicle Safety Standards applicable to incomplete vehicles including, but not limited to, Federal Motor Vehicle Safety Standard 121 – Air Brake Systems. (See Ex. "E").

The railgear and dump body were built and later attached by others. (See Ex. "E"). Navistar was not involved in the manufacture, assembly, design, distribution, or sale of either the railgear or the dump body. (See Ex. "E"). Likewise, Navistar was not involved in the design, manufacture, or assembly of the railgear's brake system. (*Id.*) Nor did Navistar service or maintain the subject dump truck or its railgear attachments. (*Id.*) These facts are undisputed.

Navistar asserts that it has multiple steps and checks in place in the manufacturing process

---

[20] The plaintiffs also disclosed Frank L. Burg as an expert witness. Mr. Burg offered no report, but simply stated that he would adopt the opinions of Mr. Barbe.

[21] Barbe Report, attached as Exhibit C to the MSJ.

to ensure the incomplete cab and chassis meets both internal Navistar standards and also applicable Federal Motor Vehicle Safety Standards. (See Ex. "E"). For example, Navistar conducted stopping distance testing required by Federal Motor Vehicle Safety Standard 121 during develop of the subject cab and chassis. (See Ex. "E"). The cab and chassis met and/or exceeded the FMVSS 121 requirements. *Id.*

Once the subject incomplete cab and chassis was manufactured but before it was sold, Navistar conducted multiple tests to ensure its brakes and other systems functioned properly and met Navistar's internal standards.[22] (See Ex. "E"). For example, Navistar conducted an ABS brake test to ensure the brakes were functioning properly and met Navistar's standards. (See Ex. "E"). It also conducted an air brake leak test that included multiple sub-parts (such as leak test pressure, wet system pressure, separation test, etc...) to ensure the air brakes were properly functioning. (See Ex. "E"). The parking and service brake functions were also checked in an end-of-the line test. (See Ex. "E"). Navistar also confirmed the weight of the incomplete cab and chassis (See Ex. "E"). The subject incomplete vehicle passed each of these tests, all of which are documented in test reports attached to the Supplemental Affidavit of Navistar's Senior Product Integrity Engineer, Roy Zeitlow. (See Ex. "E").

Mr. Zeitlow confirmed the subject vehicle met or exceeded all of Navistar's internal standards and specifications when it left Navistar's custody and control. (See Ex. "E"). It also met or exceeded all Federal Motor Vehicle Safety Standards applicable to the incomplete vehicle. (See Ex. "E"). He explained that any manufacturing defect or deficiency would have been discovered

---

[22] Plaintiffs' expert Barbe testified that having evidence the subject vehicle underwent and passed tests of the ABS brake system, leak checks, and separation tests is all good evidence of a lack of a manufacturing defect. (See Ex. "C" at p. 117).

during the dynamic testing and quality control procedures followed during assembly and testing of the vehicle.  No such defects or deficiencies in construction or composition were present when the vehicle left Navistar's control. (See Ex. "E").

Mr. Zeitlow testified the International Model 7400 Cab and Chassis, an incomplete vehicle, was reasonably safe for its intended use at the time it left the hands of Navistar, Inc. (See Ex. "E")

## Conclusion

The plaintiffs have failed to introduce any competent summary judgment evidence to establish liability on the part of Navistar. There is no evidence that the cab and chassis were unreasonably dangerous when they left Navistar's control.   Accordingly, Navistar's Motion for Summary Judgment will be granted.

Lake Charles, Louisiana, this __17__ day of  December, 2014.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE