RECEIVED
IN LAKE CHARLES, LA.

FEB 10 2015

TONY R. MOORE, CLERK
BY_____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| CHAD JOHNSON, ET AL., | * | CIVIL ACTION NO. 2:11-CV-1722 |
| Plaintiffs, | * | |
| v. | * | JUDGE MINALDI |
| RAILROAD CONTROLS, L.P., ET AL. | * | |
| Defendants. | * | MAGISTRATE JUDGE KAY |

## MEMORANDUM RULING

Before the court is BNSF Railway Company's ("BNSF") Motion for Summary Judgment [Doc. 125], to which the plaintiffs have filed a Response [Doc. 148], to which BNSF has filed a Reply [Doc. 159]. For the following reasons, BNSF's Motion [Doc. 125] is **GRANTED.**

## FACTS & PROCEDURAL HISTORY

Chad Johnson and Betty Johnson ("the plaintiffs") filed suit in federal court on September 26, 2011, against RCL, BNSF, and TNT, for injuries allegedly sustained by Mr. Johnson in the course of his employment with RCL.[1] RCL is a railroad services construction and maintenance company.[2]

According to the plaintiffs' complaint, Mr. Johnson was aboard a high rail dump truck vehicle on September 26, 2010, in Washington State when he allegedly sustained serious bodily injury and severe post-traumatic stress disorder when the vehicle lost control.[3] At the time, Mr. Johnson had been working on a BNSF railroad track when he was ordered to climb aboard the

---

[1] Compl. [Doc. 1], at 1-3.
[2] *Id.* at 3.
[3] Compl. at 3-4.

1

truck, which was then being driven by Mr. Devon Klein.[4] Mr. Klein soon realized that the truck brakes were not functioning, and informed the flagger via radio that they were out of control, at which point they were advised to "bail out."[5] The two men remained in the vehicle, and Mr. Johnson allegedly sustained injuries while the vehicle was out of control and in the ensuing stop when "the truck caught on something and flipped back on its four tires."[6]

The plaintiffs' Second Amended Complaint [Doc. 93], which includes as defendants DMF and Navistar,[7] alleges that the high rail dump truck vehicle in which Mr. Johnson was riding as a passenger on the date of the alleged incident lost braking ability due to the defective nature of the truck and the railgear, resulting in Mr. Johnson's alleged injuries.[8]

The plaintiffs have asserted negligence claims against RCL, Mr. Johnson's employer at the time;[9] claims under the Louisiana Products Liability Act, LA. REV. STAT. ANN. §§ 9:2800.51, *et seq.*, against both DMF, as the manufacturer of the high rail system itself, and Navistar, as the manufacturer of the high rail dump truck that was involved in the accident;[10] a negligence claim against TNT for failing to properly install the braking system; and Mrs. Johnson has sued for loss of consortium.[11]

In an earlier ruling by this court, the plaintiffs' FELA claims were dismissed.[12] Navistar and RCL were granted summary judgment on the remaining claims against them in subsequent

---

[4] Compl. at 5.
[5] *Id.* at 5-6.
[6] *Id.* at 6.
[7] Second. Am. Compl. [Doc. 93] ¶ II.
[8] Second Am. Compl. [Doc. 93] ¶¶ VII, IX, X-XII.
[9] *Id.* ¶¶ VII, VIII.
[10] *Id.* ¶ IX.
[11] *Id.* ¶¶ XVI. Specifically, the Mrs. Johnson alleges a "loss of marital benefits, including companionship, society, sexual relations, affection and comfort in addition to loss of support, loss of income, loss of insurance, loss of pension, loss of retirement benefits, loss of fringe benefits, [and] loss of services." *Id.* ¶ XV.
[12] *See* Mem. Ruling [Doc. 118] & J. [Doc. 119].

rulings.[13] On July 7, 2014, the plaintiffs' liability claim for design defect was dismissed against DMF.[14] Finally, on February 3, 2015, the testimony of Frank Burg and Lewis Barbe, two of the plaintiffs' expert witnesses, was excluded.[15]

I.   **Standard for Summary Judgment**

A grant of summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is said to be "genuine" only where a "reasonable jury could return a verdict for the non-moving party." *Dizer v. Dolgencorp, Inc.,* No. 3:10-cv-699, 2012 U.S. Dist. LEXIS 24025, at *16 (W.D. La. Jan. 12, 2012) (citing *Fordoche, Inc. v. Texaco, Inc.,* 463 F.3d 388, 392 (5th Cir. 2006)). "Rule 56[(a)] mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Webber v. Christus Schumpert Health Sys.,* No. 10-1177, 2011 U.S. Dist. LEXIS 99235, at *14 (W.D. La. Sept. 2, 2011) (citing *Patrick v. Ridge,* 394 F.3d 311, 315 (5th Cir. 2004)).

In ruling upon a motion for summary judgment, the district court shall draw all inferences in a light most favorable to the nonmoving party. *Id.* at *3 n.1 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986) (additional citation omitted)). However, the court will not, in the absence of proof, "assume that the nonmoving party could or would prove the necessary facts." *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888 (1990)). "The non-movant cannot preclude summary judgment by raising 'some metaphysical doubt as to the material facts, conclusory allegations, unsubstantiated assertions, or by only a scintilla of the evidence.'" *Cormier v. W&T Offshore,*

---

[13] *See* Mem. Ruling [Doc. 210] & J. [Doc. 211]; and Mem. Ruling [Doc. 228] & J. [Doc. 229].
[14] *See* Mem. Rulin[Doc. 118] & J. [Doc. 119].
[15] *See* Minutes, February 3, 2015 [Doc. 232].

*Inc.*, No. 10-1089, 2013 U.S. Dist. LEXIS 53416, at *18-19 (W.D. La. Apr. 12, 2013) (citing *Little*, 37 F.3d at 1075.

## II. BNSF's Negligence

The primary thrust of the plaintiffs' allegations against BNSF is that BNSF owned and operated the tracks on which the accident occurred and (1) had a duty to inform RCL that local BNSF crews did not use high rail vehicles any larger than pick-up trucks in wet conditions, and (2) the track itself was defective. The parties make arguments about BNSF's negligence under both a theory of general negligence under Louisiana Civil Code article 2315 and custodial negligence under article 2317.1. There is a false distinction between the burden of proof required for claims under article 2315 as compared to those under article 2317. *See, e.g, Dupre v. City of New* Orleans, 1999-3651, p. 5 n. 5 (La. 8/31/00); 765 So.2d 1002, 1007 n. 5 (stating that the addition of article 2317.1 in 1996 eliminated the distinction in the burden of proof necessary under article 2315 versus that needed under 2317).

### A. Duty to Warn

In support of their motion, the plaintiffs have submitted the accident report compiled by RCL. The report states that when weather conditions caused wet rails, local BNSF crews did not high rail in vehicles larger than a pick-up truck because of the difficulty in stopping the larger vehicles—a fact RCL was unaware of until after the accident.[16] However, BNSF draws the court's attention to the contract between BNSF and RCL, which states "it is agreed and understood that [RCL] shall have ultimate responsibility for supervision, safe work method and practices of its agents, subcontractors, servants, and employees," and "[RCL] assumes all

---

[16] Pls.' Ex. B, RCL Incident & Assessment Report [Doc. 148-3], at 1.

responsibility for the safe work methods and practices of its agents, servants, and employees . . . ."[17]

Duty is a question of law. *See Harris v. Pizza Hut*, 455 So.2d 1364 (La. 1984). "[T]here can be no negligence unless there is first a duty." *Kerr-McGee Corp. v. Ma-Ju Marine Servs.*, 830 F.2d 1332, 1340 (5th Cir. 1987). Louisiana law imposes on a property owner the duty to warn of unreasonable risks of harm presented by his property. *Matthews v. Ashland Chem., Inc.*, 770 F.2d 1303, 1308 (5th Cir. 1985) (citing *Kent v. Gulf States Utils.*, 418 So. 2d 493, 497 (La. 1982)). But in situations where there is a contract between the parties, Louisiana courts look to the express provisions of the contract to determine whether a duty exists. *See Yocum v. City of Minden*, 649 So.2d 129, 142 (La. Ct. App. 1995); *Black v. Gorman-Rupp*, 791 So.2d 793, 795-96 (La. Ct. App. 2001).

The contract herein specifically delegates the duties of supervision and safe work methods and practices to RCL. RCL, and RCL alone, had the duty to ensure that its employees were engaging in safe work practices at the site. Because BNSF was neither responsible for the supervision of RCL employees nor the safety of the employees' work practices, there was no affirmative duty to warn of the danger of using high-rail dump trucks on wet rails.

### B. Defect in the Tracks

Under either Article 2315 or Article 2317.1, the plaintiffs "must prove that the structure was within the defendant's custody, that it contained a defect that presented an unreasonable risk of harm to others, and that the defendant knew or should have known of the defect." *Poindexter v. U.S.*, No. 06-30529, 244 Fed.Appx. 561, 564 (5th Cir. 2007) (citing *Brown v. Williams*, 850 So.2d 1116, 1120 (La. Ct. App. 2003)).

---

[17] Wayside Installation Agreement [Doc. 148-5], at 3, 4.

The plaintiffs seem to make the argument that the track must have been defective—and that BNSF had knowledge of such defect—because the local crews did not take the high rail in vehicles larger than pickup trucks during wet weather.[18] Other than this argument, the plaintiffs present no factual support that the tracks in question were unreasonably dangerous because of a defect. They have not created a genuine dispute as to a material fact on this issue.

Lake Charles, Louisiana, this 10 day of February, 2015.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE

---

[18] Pls.' Opp'n & Incorporated Mem. to BNSF Railway Company's Mot. for Summ. J. [Doc. 148], at 5.

6